**Minniel FERGUSON–BEY**

v.

**LEVER BROTHERS CO., INC., et al.**

**Minniel FERGUSON–BEY**

v.

**LEVER BROTHERS CO., INC., et al.**

**Civ. Nos. Y–82–142, Y–82–3245.**

United States District Court,
D. Maryland.

May 21, 1984.

---

Minniel Ferguson-Bey, pro se.

James P. Garland, Baltimore, Md., for defendant Lever Bros. Co., Inc.

Bernard G. Link, Baltimore, Md., for defendant Intern. Chemical Workers Union AFL/CIO Local 217.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiff in these cases, Minniel Ferguson-Bey, has been a frequent *pro se* contributor to this Court. She has filed at least four actions, and intervened in a fifth, all springing from her allegations relating to her employment with one of the defendants, and raising basically the same claims. Three of her actions have been filed *in forma pauperis*, and one of the defendants has raised serious and substantial allegations about the truthfulness of statements in her applications for leave to proceed *in forma pauperis*. These allegations were raised in identical motions to dismiss filed in the two above-cited actions. Before ruling on these motions, a review of their background should be helpful.

## SUMMARY OF LITIGATION BROUGHT BY PLAINTIFF

The plaintiff's first known litigation filed in this Court was assigned to Judge Northrop in 1980 and was docketed as Civil No. N–80–1422. In her complaint, Ferguson-Bey claimed that she had been discriminated against by Lever Brothers, her former employer. She claimed that she was placed on disciplinary suspension, and later placed on probation, because of her race, and that she was arbitrarily assigned to a different job after she was recalled from a layoff. She also claimed that she was denied early leave one day, while whites were not, and that after she filed a complaint against Lever Brothers with the Maryland Human Relations Commission in August, 1978, she was harassed by her supervisor by being required to perform certain cleaning tasks while others were not, and that she was assigned to a job against company rules.

After appointing counsel to represent Ferguson-Bey, Judge Northrop presided over a trial, and determined that the plaintiff had failed to present a *prima facie* case of disparate treatment. His ruling was recently upheld by the Fourth Circuit in an unpublished opinion, *Minniel Ferguson-Bey v. Lever Brothers Co., Inc.*, 725 F.2d 673 (4th Cir.1984).

Two years after filing her first case, Ferguson-Bey filed another action against the Lever Brothers Co., docketed as Civil No. J–82–142, and assigned to Judge Jones. Along with an application to proceed *in forma pauperis*, Ferguson-Bey filed a complaint alleging that Lever Brothers and the union which represented her while employed there, the International Chemical Workers Union, AFL–CIO, Local 217, had discriminated against her on the basis of race and sex by: 1) refusing to pay her medical benefits, and 2) forcing her to take paid vacation time while she was on layoff. Ferguson-Bey withheld service of process as to the union and proceeded against Lever Brothers. Lever Brothers filed a motion to dismiss, based on the ground of collateral estoppel and failure to state a claim. After a further motion to dismiss for different reasons was filed, Judge Jones retired from the bench, and the case was assigned to Judge Black. Further motions to dismiss were filed, including a supplemental motion filed on May 13, 1983, which presented evidence that Ferguson-Bey had assets which she had not listed in her affidavit in support of her motion for leave to proceed *in forma pauperis*.

This action was transferred to this Court on May 16, 1983, because of the similarity between this case and Ferguson-Bey's third case, discussed below. On July 8, 1983, this Court dismissed Ferguson-Bey's claims against the union for failure to serve, but denied Lever Brothers' motions to dismiss on the grounds of collateral estoppel, failure to state a claim, frivolity or maliciousness. The same decision granted the motion to dismiss as to the medical benefits claim, and set a hearing date for a determination of whether the plaintiff had "truthfully completed" her affidavit in support of her request to proceed *in forma pauperis*. The circumstances under which that hearing was cancelled will be discussed below.

The third claim filed by Ferguson-Bey against Lever Brothers and the union, was filed November 8, 1982, and docketed as Civil No. Y–82–3245, with another motion for leave to proceed *in forma pauperis*. This complaint charged Lever Brothers with having breached a conciliation agree-ment entered into after an EEOC complaint was filed by Ferguson-Bey, and charged the union with having discriminated against her in terms of its representation of her in her various battles with Lever Brothers. Lever Brothers predictably filed a motion to dismiss on the grounds that the claims were duplicative, barred by the statute of limitations, frivolous, and malicious. The union filed a motion to dismiss for failure to state a claim, lack of subject-matter jurisdiction, and frivolity and maliciousness. Lever Brothers subsequently filed a supplemental motion to dismiss on the grounds of alleged false statements submitted by Ferguson-Bey in her affidavit in support of her motion for leave to proceed *in forma pauperis*.

The fourth matter involving the plaintiff before this Court is a class action suit brought by the National Organization for Women charging Lever Brothers and the union with having discriminated against employees on the basis of sex in terms of promotions and job status. This action was closed when a consent decree was signed by the parties and by this Court. However, Ferguson-Bey appeared at the hearing on the consent decree as a member of the class covered by the agreement, and opposed it. She has since filed papers attempting to acquire her share in the settlement amount.

The fifth and final claim filed by Ferguson-Bey was docketed as Civil No. Y–83–4346 on December 9, 1983. This action, naming as defendants lawyers, organizations and other individuals, alleges that the defendants engaged in a conspiracy to defraud her, to block her access to the courts and to prevent enforcement of the consent decree. The plaintiff paid the required filing fee, and the Court has directed that process be served in that case.

## DISPOSITION OF MOTIONS TO DISMISS

Two of the plaintiff's pending claims, Civil Nos. Y–82–142 and Y–82–3245, are subject to pending motions to dismiss filed by Lever Brothers. The motions allege that Ferguson-Bey misrepresented her fi-

nancial status in affidavits filed in support of her motions for leave to proceed *in forma pauperis* in these cases. The plaintiff has responded to these allegations claiming they are untrue and claiming that Lever Brothers had engaged in illegal conduct in procuring the information it has submitted to the Court.

An evidentiary hearing was set on both of these matters for August 5, 1983. The Court, because of a schedule conflict, rescheduled that hearing to September 16, 1983, at 3:00 p.m., in a telephone call to the parties, and a letter confirming the new date was sent to the attorneys representing Lever Brothers and to Ferguson-Bey on August 8, 1983. On August 16, 1983, a letter was received from Ferguson-Bey objecting to the postponement. On August 24, 1983, this Court wrote the parties and informed them that the date of the hearing would not be changed.

On September 16, 1983, roughly one hour before the scheduled hearing, a phone call was received in chambers from a secretary for a doctor who indicated that Ferguson-Bey would be unable to attend the hearing. The doctor's office was requested to send a report as to the reasons for the nonappearance and as to when the hearing could be rescheduled. The hearing was cancelled.

As of one week later, no report had been received from the doctor's office or from Ferguson-Bey. On September 23, 1983, this Court wrote Ferguson-Bey requesting that the report be filed "indicating why you were unable to appear and when you would be able to appear." Although a prompt response was requested, none was received. On October 18, 1983, more than three weeks later and more than one month after the hearing had been scheduled, this Court again wrote Ferguson-Bey requesting that she file the requested information within ten days. She was also informed that in the absence of any further submissions, the Court would act "on the facts known to me." On November 28, 1983, Ferguson-Bey filed a response which stated, in its entirety, "Enclosed you will find a medical slip from Dr. Jesse Holmes." The form attached, apparently a prescription slip for Dr. Holmes, included the name and address of Ferguson-Bey and stated, "The above named is under my professional care and is presently unabled [sic] to appear in court. A detailed report will follow." No report has followed.

On March 27, 1984, the Court received a letter from the "Center for Living," which indicated that Ferguson-Bey has been diagnosed as having Acute Intermittent Porphyria and requesting that counsel be appointed for her because of her "disability." However, the Court ruled on July 8, 1983, in one of these cases (Y–82–142), that counsel will not be appointed because the Fourth Circuit has instructed district courts to appoint counsel for *in forma pauperis* litigants only under exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779 (4th Cir.1975). For the purposes of the motion under consideration by the Court at this time, the facts which need to be addressed are exceedingly simple: did Ferguson-Bey make misrepresentations on the affidavit she submitted in order to be allowed to proceed *in forma pauperis?*

As mentioned earlier, the Court scheduled an evidentiary hearing on this matter last fall. The hearing was cancelled at the last minute following a request by Ferguson-Bey. Despite several requests for an explanation for the cancellation, and several requests for a date when the hearing could be rescheduled, the plaintiff has furnished the Court with neither. Accordingly, as Ferguson-Bey was instructed in letters dated September 23, 1983, and October 18, 1983, the Court will rule on the defendant's motion to dismiss based on the facts revealed to the Court at this point.

These facts are simply stated. On January 19, 1982, the plaintiff filed a "motion for leave to proceed *in forma pauperis*" in the case that was docketed as 82–142. The preprinted form furnished by the Court clerk for this purpose, signed by Ferguson-Bey (although not notarized), states, in capitalized letters just above the signature line:

I UNDERSTAND THAT A FALSE STATEMENT OR ANSWER TO ANY QUESTION IN THIS AFFIDAVIT

WILL SUBJECT ME TO PENALTIES FOR PERJURY.

The form also states:

I further have truthfully set forth below information relating to my ability to pay the costs of defending the case against me.

At one point in the affidavit, the plaintiff checked "No" after the following question:

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or any other source?

Later in the affidavit, Ferguson-Bey was asked,

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Her answer, in its entirely, was a "1976 Car" described as being a Ford Mercury with a value of $1,000. The motion for leave to proceed *in forma pauperis* indicates it was granted by Judge Harvey on January 19, 1982.

In the case now docketed as Civil No. Y–82–3245, Ferguson-Bey filed a motion for leave to proceed *in forma pauperis* on a similar form. Filed on November 8, 1983, the form contained an identical statement on its first page affirming that the plaintiff would "truthfully" set forth financial information. The form also contained, above the signature line, the following declaration in capitalized letters:

I DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

On this form, the plaintiff also checked "No" to the question inquiring about income from any forms of self-employment, and in response to the question as to automobiles or "other valuable property (excluding ordinary household furnishings and clothing)," the plaintiff listed a "1975 Ford Cougar Car" with a value of $1,200.

The form indicates at the bottom that leave to proceed *in forma pauperis* was granted on that day by Magistrate Smalkin.

The allegations raised by Lever Brothers as to the plaintiff's poverty status spring from a civil action, unrelated to the actions now before this Court, which she filed in Baltimore County Circuit Court, docket number 139/46/82–L–316. Attached to the motion submitted by Lever Brothers are the declaration filed on her behalf in that case, *Ferguson-Bey v. Elite Moving and Storage, Inc., and Gene Adams Auctioneers, Inc.*, and a transcript of the deposition of Ferguson-Bey taken by the attorney for one of the defendants.

The declaration alleges that certain items of Ferguson-Bey's property were given to Elite for storage, and that, because of negligent misrepresentations and deceptions on the part of Elite, Ferguson-Bey was overcharged for storage and could not afford to pay the necessary costs to remove her goods from storage. The goods were then apparently turned over to Gene West, and Ferguson-Bey was able to retrieve the goods only after paying him $3,000. After reviewing the goods she received, Ferguson-Bey claims that certain items were missing.

In the transcript of the deposition taken January 12, 1983, Ferguson-Bey at one point reviews a list of items which she claims were placed in storage but not returned to her (the list was originally attached to the declaration as Exhibit "G," *see* deposition, p. 5). These items total more than $10,000, at values estimated by Ferguson-Bey (deposition, pp. 4 and 7–8). In addition to the items which had been placed in storage and not returned, Ferguson-Bey testified that a quantity of goods which she valued at more than $10,000 was returned to her (p. 9). Among the goods listed on the schedule of unreturned items were three diamond rings with a total value of $2,750, two diamond necklaces worth $1,100, and diamond earrings worth $800; pearl necklaces, earrings, bracelets, and rings worth $1,030; ruby pendants, earrings, rings and bracelets worth $1,750; as well as numerous other items, including

furs, silver trays, coin collections, etc., which could hardly be considered "ordinary household furnishings and clothing."

In addition, in the deposition, she stated (at pp. 16–18), that she had been engaged in selling cosmetics (hairpieces, wigs, and make-up) from 1971 up to that time, and although she said her self-employment had been "off and on," she also stated that "I have never given it up."

A closer reading of the deposition testimony also indicates that Ferguson-Bey tried to prevent the use of her deposition testimony by her former employer, Lever Brothers. While her evasiveness certainly is not relevant as to any assets she may have had, whether she made "conscious omissions" from her affidavit is a factor to be considered in ruling on the disposition of this case, as will be discussed below.

Her evasiveness first appeared when Ferguson-Bey was being asked routine background questions. At page 10, Lee Ogburn, an attorney representing a defendant, asked where she was employed a year earlier. Ferguson-Bey's counsel then asked to go off the record. Upon returning on the record, Mr. Ogburn made the following statement:

MR. OGBURN: We went off the record after I asked Ms. Ferguson-Bey about where she was last employed, and she spoke with her counsel; and I have advised her that I have no intention of using any information that is provided in this deposition in any matter outside of this case.

BY MR. OGBURN:

Q. With that on the record, Ms. Ferguson-Bey—

A. Well, would there by any other person related to this matter—would that include any other person that this information would be extended to?

Q. Well, I can't speak for others.

A. You are speaking for yourself, but the information is still here. You do not have to use it, but someone else can.

Q. I can't speak for other people. I can only tell you that I have no intention of using the information outside of this case.

MR. KIRKPATRICK: And his file is confidential, so it would be very unlikely that anybody else would come across that.

THE WITNESS: I'll take the Fifth on that.

MR. OGBURN: On when you were last employed, you will take the Fifth Amendment?

THE WITNESS: Yes.

Later (at p. 18), Ferguson-Bey again refused to identify her former employer.

Q. Have you had any employment since 1972, other than this self-employment in the cosmetic business?

A. Yes.

Q. And what was that?

A. It's back to the first question.

Q. Do you want to take the Fifth Amendment in response to my question?

A. Yes.

Ferguson-Bey's reluctance to answer any questions related to her employment with Lever Brothers certainly indicates that she wanted to hide from it the goods she sought in her Baltimore County Circuit Court action.

By way of summary, it appears that, at the time the plaintiff filed two *in forma pauperis* applications, she was working and had been working as a self-employed seller of cosmetics, hairpieces, and wigs, although she stated in her affidavits that she had not received "any income" from any form of "business" or "self-employment." It would also appear that she had recently recovered some $10,000 in goods, and believed she was entitled to recover another $10,000 worth of goods which could by no means be considered "ordinary household goods and clothing," although she did not list these items on her affidavits.

In light of this apparent contradiction, the Court scheduled the hearing in September to question Ferguson-Bey about the apparent inaccuracies in her affidavits. Because of her cancellation of that hearing, and her failure to provide the Court with sufficient explanation for the cancellation

of the hearing, or with another date for the hearing, the Court must act on the information now before it. This information shows what can only be construed as inaccurate statements on sworn affidavits submitted to this Court, both as to employment and as to personal belongings. Furthermore, the statements by the plaintiff at her deposition indicate that she wanted to keep these facts from her former employer, Lever Brothers, and the only possible explanation for such behavior was that she knew that ownership of the items in question would conflict with the statements she had made in her sworn affidavits submitted to proceed *in forma pauperis.*

In response to Lever Brothers' motion, the plaintiff first argues that she did not list the items on her affidavit because she did not in fact, have them, (which is why she filed the state court case in the first place). However, in her testimony at the deposition, she also acknowledges that she received goods valued at "$10,000 plus" back from storage, an amount which would stretch the term "ordinary household goods and clothing" beyond any acceptable definition. Furthermore, she is claiming in three places—her opposition to the Lever Brothers' motion and her affidavits/that she does not own the goods, while she claimed in her declaration in state court that she does own the goods. Her statements can only be considered duplicitous. Even if she did not consider the goods to belong to her at the time of filing the affidavits, if the affidavits had been filed in good faith, she should have revealed that she claimed the goods but her ownership was contested.

■ The plaintiff also contends that the deposition was acquired illegally by Lever Brothers, and should, therefore, not be considered by the Court. She advances two arguments to support this theory: that the release of the information violates the attorney-client privilege and that it violates a "stipulation of confidentiality." As to her claim of privilege, it is universally recognized that the attorney-client privilege covers only confidential information communicated by a client to his or her attorney outside the presence of any third parties. McCormick, *Evidence,* § 91 at 188 (1972).

At her deposition, the attorney for one of the defendants and the court-reporter were present.

As to the purported confidentiality of the deposition, Ferguson-Bey appears to be arguing on two fronts—first that depositions are somehow inherently confidential, and second that there was a "stipulation of confidentiality." Chapter 400 of the Maryland Rules of Civil Procedure, 9B Ann.Code of Md., governs the taking and use of depositions in this state, and that chapter stresses disclosure over confidentiality. There is a provision which would allow a deponent to request a protective order sealing a deposition (Rule 406(a)(7)). However, the rule also specifies that such a protective order should be granted very rarely, and only to "prevent genuine oppression or abuse." Rule 406(b). Furthermore, Rule 411(b)(2) provides for the filing of depositions in court records, and Rule 413(a)(1) permits the liberal use of depositions to impeach or contradict testimony. Essentially, that is the use to which the deposition testimony is being put here, as Lever Brothers attempts to contradict Ferguson-Bey's statements in her affidavits with prior inconsistent statements.

As to the stipulation of confidentiality claimed by the plaintiff, the Court presumes that Ferguson-Bey is referring to the statement by Ogburn, counsel for the defendant in the state case, that, "I have no intention of using the information outside of this case." In the first place, that hardly constitutes a stipulation of confidentiality, and, in the second place, there is no indication that Ogburn did in fact "use the information outside of" that case.

■ Therefore, the deposition transcript is properly before this Court. Ferguson-Bey has not denied its authenticity, and it clearly establishes that she was not truthful in her affidavits submitted in support of her application for *in forma pauperis* status. The Court has afforded her ample opportunity to explain the inconsistencies, and she has, through her conduct, foregone the opportunity for an oral hearing, and has submitted a written statement, which has been considered by the Court,

arguing with the propriety and relevance of the deposition transcript. The remaining question is what action the Court should take.

The Fourth Circuit has not ruled on the appropriate disposition of an action brought *in forma pauperis* by a plaintiff who has made misrepresentations on an application for *in forma pauperis* status, but the Third and the Sixth Circuits have determined that such an action should be dismissed with prejudice only if the district court finds that the plaintiff engaged in "conscious or intentional acts or omissions" in deluding the Court. *Harris v. Cuyler*, 664 F.2d 388, 391 (3d Cir.1981), *Thompson v. Carlson*, 705 F.2d 868, 869 (6th Cir.1983).

This Court realizes that dismissal with prejudice is a harsh sanction, *Harris*, 664 F.2d at 390, but believes that Ferguson-Bey's omission from her affidavit of the existence and value of her luxury goods could only have been intentional and conscious, particularly in view of the evasive tactics she engaged in during her deposition and her inability to appear before the Court or explain her absence from the scheduled hearing on the subject. Therefore, the Court has determined that her actions brought against Lever Brothers and the union should be dismissed with prejudice, and appropriate orders will be entered.