Frankie L. McCOY, Sr.

v.

Captain R.O. WHITE, et al.

Frankie L. McCOY, Sr.

v.

CORRECTIONAL MEDICAL
SYSTEMS et al.

Frankie L. McCOY, Sr.

v.

Bernard N. SMITH, et al.

Frankie L. McCOY, Sr.

v.

Captain R.O. WHITE, et al.

Frankie L. McCOY, Sr.,

v.

Lt. R.E. JOHNSON, et al.

Frankie L. McCOY, Sr.

v.

Patricia GOINS.

Frankie L. McCOY, Sr., 172–986

v.

Sewall B. SMITH, et al.

Frankie L. McCOY, Sr., 172–986

v.

CORRECTIONAL MEDICAL
SYSTEMS et al.

Civ. A. Nos. L–90–3014, L–91–153, L–91–
1277, L–91–1760, L–91–2151, L–92–68,
L–92–952 and L–92–1037.

United States District Court,
D. Maryland.

May 27, 1992.

See also 145 F.R.D. 399.

---

Frankie L. McCoy, Sr., pro se.

Philip M. Andrews, Glenn W. Bell, Timo-
thy J. Paulus, Amy Kushner, Kevin F. Ar-

thur, and Aron U. Raskas, Baltimore, MD, for defendants.

## MEMORANDUM

LEGG, District Judge.

Now before the Court is an unopposed[1] Report and Recommendation filed by Chief Magistrate Judge Clarence E. Goetz on May 6, 1992. For reasons set forth herein, this Court will adopt the Magistrate Judge's recommendations and dismiss six of the cases captioned herein.

The above-captioned cases were consolidated for limited purposes and referred to Magistrate Judge Goetz to conduct proceedings and submit findings and recommendations on two issues, to wit: whether plaintiff knowingly misrepresented his financial assets at the time he filed affidavits in support of indigency in those cases, and whether sanctions should be imposed against plaintiff in any or all of those cases.

■ An evidentiary hearing was conducted on April 29, 1992. A witness for the state defendants testified that in 1989 plaintiff received a total of $4,485.07[2] in his prison account; in 1990, $1,689.50; and in 1991, $2,160.80. Expenditures totaled $5,693.01 in 1990, and $2,100.04 in 1991.

Exhibits and testimony presented through a witness for the medical care defendants demonstrates that on July 5, 1990 plaintiff opened a Totten trust by depositing $2,000.00 at Maryland National Bank [Bank]. Various deposits and withdrawals were made that fall, and plaintiff ultimately transferred the money from that trust into a certificate of deposit [CD] worth $2,000.00. The CD was redeemed on March 14, 1991. Without recounting fully the facts set forth in the Report and Recommendation, the Court notes that at the time plaintiff filed Civil Action Nos. L–90–3014, L–91–153, L–91–1277, L–91–1760 and L–91–2151 and indicated on the accompanying Affidavits of Indigency that he was

without funds, plaintiff actually had amounts ranging between $76.71 to $2,121.30 in his prison and Bank accounts. At the time he filed Civil Action No. L–92–68, plaintiff did not have money in his accounts; however, he failed to reveal that he had received money for the twelve months preceding that filing, as requested in the Affidavit of Indigency form.

Plaintiff did not dispute this documentary evidence, and in fact testified that during the time in question, he had received $4,000.00 from the medical care defendant in a settlement.[3] Instead, plaintiff testified that (1) the money was used to support his family; (2) the amount of money was not large, and was transferred back and forth between accounts; (3) the $4,000.00 settlement contained a secrecy clause that plaintiff not reveal the fact of settlement; and (4) plaintiff was in so much pain and psychological distress, he may have forgotten about the money. Plaintiff also stated that he has filed so many lawsuits, he just fills in the Affidavits of Indigency without thinking.

Each of these arguments is without merit. In the Affidavits of Indigency, plaintiff fails to name any dependents. Furthermore, Division of Correction personnel testified that plaintiff has purchased expensive jewelry, a color television set, expensive clothing, and choice cigars while incarcerated. The mere fact that the money was transferred between accounts does not preclude plaintiff from reporting the money under his ownership and control. Inasmuch as plaintiff, formerly a businessman, has filed more than 30 actions in this Court over the last several years, his claim that he did not understand the forms falls flat. Plaintiff is an experienced prison litigator and clearly has the ability to understand the simply worded Affidavits in Support of Indigency. Even if plaintiff believed that he could not reveal the precise source of

1. A copy of the Report and Recommendation, together with instructions on the deadline for filing any objections to the Report and Recommendation and the consequences for failing to object, were mailed to plaintiff on May 6, 1992. Plaintiff has chosen not to object to the Magistrate Judge's Report and Recommendation.

2. This amount included a $4,000.00 check deposited on December 13, 1989.

3. Plaintiff also admitted that he had received $1,2000.00 and $350.00 either in settlement of other lawsuits or as payment of judgments obtained in other civil suits.

his settlement, he could and should have reported that he had received money in his bank and prison accounts. The evidence certainly shows that plaintiff misrepresented his assets at the time he executed Affidavits in Support of Indigency in Civil Action Nos. L–90–3014, L–91–153, L–91–1277, L–91–1760, L–91–2151 and L–92–68.

██ Ample precedent exists for dismissing actions with prejudice where blatant misrepresentation of financial status has occurred. *See Romesburg v. Trickey,* 908 F.2d 258, 260 (8th Cir.1990); *Dawson v. Lennon,* 797 F.2d 934, 935–36 (11th Cir. 1986); *Thompson v. Carlson,* 705 F.2d 868, 869 (6th Cir.1983); *Ferguson–Bey v. Lever Bros. Co.,* 586 F.Supp. 1435, 1442 (D.Md. 1984). This strict sanction is justified under the facts of this case, and accordingly Civil Action Nos. L–90–3014, L–91–153, L–91–1277, L–91–1760, L–91–2151 and L–92–68 will be dismissed with prejudice.

██ The evidence is unclear as to whether plaintiff misrepresented his financial status at the time he filed Civil Action Nos. L–92–952 and L–92–1037. These actions will therefore be permitted to proceed under separate Orders.

A separate Order shall be entered in accordance with this Memorandum.

## ORDER

In accordance with the foregoing Memorandum, IT IS this 26th day of May, 1992, by this Court, hereby ORDERED:

1. That the unopposed Report and Recommendation signed by United States Magistrate Judge Clarence E. Goetz on May 6, 1992 IS HEREBY ADOPTED;

2. That Civil Action Nos. L–92–952 and L–92–1037 BE PERMITTED TO PROCEED in this Court;

3. That Civil Action Nos. L–90–3014, L–91–153, L–91–1277, L–91–1760, L–91–2151 and L–92–68 ARE DISMISSED WITH PREJUDICE;

4. That the Clerk of Court CLOSE Civil Action Nos. L–90–3014, L–91–153, L–91–1277, L–91–1760, L–91–2151 and L–92–68; and

## REPORT AND RECOMMENDATION

GOETZ, United States Magistrate Judge.

The above-captioned cases were referred to the undersigned to "conduct proceedings as appropriate and submit proposed findings and recommendations on the issues of whether the plaintiff knowingly misrepresented his financial assets at the time he filed affidavits in support of indigency in those cases and whether sanctions should be imposed against plaintiff in any or all of those cases."

An evidentiary hearing was conducted on April 29, 1992. At the outset of the hearing, plaintiff requested appointment of counsel which was denied subject to being reconsidered if necessary. Appointment of counsel is discretionary in cases of this kind. In determining whether counsel should be appointed, the court must consider the complexity of the case and the ability of the plaintiff to present his case effectively without counsel. *Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984). The matter presently before the court cannot by any standard be considered complex. Plaintiff has previously demonstrated that he has the ability to present his cases without the assistance of counsel.[1] At the hearing, plaintiff testified that he had never lost a case on the merits. Mr. McCoy's cases for the most part have been handled by the undersigned and it is abundantly clear that plaintiff has the ability to present his cases adequately on his own. His performance at the hearing at issue here leaves no doubt of his ability in this regard. Accordingly, having reconsidered plaintiff's motion for appointment of counsel, the court will again deny it.

Since the question before the court is plaintiff's financial condition at the time of the filing of his declarations in support of requests to proceed *in forma pauperis,* all

---

**1.** Plaintiff has filed over thirty cases in this court since 1984 and an unknown number in the state courts.

of the evidence presented by plaintiff and by all of the defendants is relevant and has been considered as applicable to all of the cases *sub judice*. During the time in question, the form of the declaration in support of request to proceed *in forma pauperis* was changed twice. In case number L–90–3014, the old form was used. In cases number L–91–153, L–91–1277, L–91–1760, L–91–2151, and L–92–68, the first new form was used. In cases number L–92–952 and L–92–1037, the latest form was used. Copies of the forms filed in each case are attached to this report and recommendation. In case number L–90–3014, the questions and answers at issue are as follows:

2. Have you received within the past twelve months any money from any of the following sources?
  a. Business, profession, or form of self employment?
    YES [ ] NO [X]
  b. Rent payments, interest or dividends?
    YES [ ] NO [X]
  c. Pensions, annuities, or life insurance payments?
    YES [ ] NO [X]
  d. Gifts or inheritances?
    YES [ ] NO [X]
  e. Any other sources?
    YES [ ] NO [X]
  If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months. N/A

3. Do you own any cash or do you have money in a checking or savings account?
    YES [ ] NO [X]
  If the answer is yes, state the total value owned. N/A

5. List the persons who are dependent upon you for support; state your relationship to these persons and indicate how such persons contribute to their own support. NONE

The form contains the following language above and below the signature line:

I understand that a false statement or answer to any question in this declaration will subject me to penalties for perjury.
  s/ Frankie L. McCoy Sr.
  PETITIONER'S SIGNATURE

I declare under penalty of perjury that the aforegoing is true and correct.

The questions and answers at issue in cases number L–91–153, L–91–1277, L–91–1760 and L–91–2151 are as follows:

2. Have you received within the past twelve months any money from any of the following sources?
  a. Business, professional, or self employment?
    YES [ ] NO [X]
  b. Rent payments, interest or dividends
    YES [ ] NO [X]
  c. Pensions, annuities, or life insurance
    YES [ ] NO [X]
  d. Gifts or inheritances
    YES [ ] NO [X]
  e. Any other sources
    YES [ ] NO [X]
  If the answer to any of the above is YES, describe each source of money and state the amount received for each during the past twelve months.

3. Do you own any cash or you have money in a checking or savings account?
    YES [ ] NO [X]

5. List the persons who are dependent upon you for support; state your relationship to those persons; and indicate how much you contribute toward their support. NONE

I understand that any false statement or answer to any question in this declaration will subject me to the penalties of perjury.
  s/ Frankie L. McCoy
  Petitioner's Signature

In case number L–92–68, all of the answers were the same except question number 3, which plaintiff answered as follows:

3. Do you own any cash or you have any money in a checking or savings account?
    YES [X] NO [ ]
    MARYLAND   NATIONAL   BANK
    $10.00 DOLLAR'S

That case was filed after this court (Legg, J.) issued the orders of reference which gave rise to the hearing which is the subject of this report and recommendation.

From the above, it can be seen that the plaintiff's financial situation from twelve months prior to the filing of the declaration

in L–90–3014 must be examined. The cases at issue here involve a number of state official defendants in cases number L–90–3014 and L–91–1277, L–91–1760, L–91–2151, and L–92–68, and Correctional Medical Systems (CMS), a contract medical care provider in case number L–91–153. Hereafter references to exhibits will be to Plaintiff's Exhibits, State Defendants' Exhibits or CMS Exhibits.

At the hearing on April 29, 1992, the state defendants first called Ms. Ilene Carroll, head of the finance office of the Baltimore Region of the Department of Corrections. Ms. Carroll identified the financial records concerning plaintiff's account at the Maryland Penitentiary which were admitted into evidence as State Defendants' Exhibits A–D. She testified that the plaintiff received a $4,000.00 deposit to his account on December 13, 1989. (*See* State Defendants' Exhibit A, p. 8). In addition, she testified that the records reflect that in 1989 plaintiff received a total of $4,485.07; in 1990 he received $1,689.50; and in 1991 he received $2,160.80. His expenditures in 1990 were $5,693.03 and in 1991 he spent $2,100.04.

CMS Exhibit 18 shows that on July 5, 1990, plaintiff opened a passbook savings account at Maryland National Bank (MNB) with an opening deposit of $2,000.00. This account was subject to the sole order of the plaintiff during his lifetime. The records of this account show that on September 11, 1990, plaintiff had a balance of $1,411.31. On September 14, 1990, plaintiff withdrew $1,100.00; on November 1, he withdrew $190.00, leaving a balance of $121.31. On November 1, a deposit of $240.00 was made. On July 31, 1990, plaintiff purchased a CD in the amount of $2,000.00 at MNB. The CD was redeemed on March 14, 1991. In any event, on November 20, 1990, when plaintiff represented to this court—in case number L–90–3014—that he had no money in a savings account, he in fact had $121.30 in the passbook account and $2,000.00 in the CD. Likewise, on January 18, 1991, when plaintiff represented to this court—in case number L–91–153—that he had no money in a savings account, he in fact had $15.33 in the passbook account,

$34.24 in his prison account, and the $2,000.00 CD. On May 8, 1991, when plaintiff represented to this court—in case number L–91–1277—that he had no money in a savings account, he in fact had $210.33 in the passbook account and $258.94 in his prison account. The CD had been redeemed at that time. On June 24, 1991, when plaintiff represented to this court—in case number L–91–1760—that he had no money in a savings account, he in fact had $207.00 in the passbook account and $111.50 in his prison account. Plaintiff withdrew $109.00 from the passbook account on June 25, 1991. On July 31, 1991, when he represented to this court that he had no money in his accounts, he had $76.71 in his prison account. There is no evidence that he had any money in any account on January 9, 1992 when he filed case number L–92–68. Plaintiff had, according to his testimony and his later filings in cases number L–92–952 and L–92–1037, at that time received a judgment in a civil case in state court of $350.00. According to plaintiff's filings in the latter two cases, the $350.00 was received within ten months of April 9, 1992 (case L–92–1037) or March 31, 1992 (case L–92–952). He did not report this on the affidavit filed in L–92–68.

The records show without a doubt that when plaintiff filed his affidavits in these cases and represented to this court that he had not received any money *from any source* in the twelve months preceding each filing that he in fact had received money within that time period and in fact had money in his accounts when he filed all of the cases at issue except L–92–68. In addition, the District Court for Baltimore City (Weitzman, J.) found that the plaintiff had falsified his "Petition for Waiver of Costs" in case number CV 010–08758–91. Judge Weitzman gave plaintiff 30 days to pay the costs of filing or suffer dismissal of his case with prejudice. Plaintiff did not pay the costs and the case was dismissed with prejudice. (CMS Exhibits 14, 15).

Plaintiff testified that the $4,000.00 check was from a settlement of a civil case against against CMS. He also testified that he received additional money, including a $1,200.00 payment and a $350.00 pay-

ment, either in settlement of other lawsuits or as payment of judgments obtained in other civil suits.

Plaintiff did not dispute any of the testimony or documentary evidence offered at the hearing. He offered essentially four explanations for his actions. First, he said that he used the money to support his family members who had no other sources of funds. Second, he said that although the records make it look like he had a lot of money, they were deceiving because it was really the same money going into and out of his accounts. Third, as to the $4,000.00 settlement, he testified that he felt that he was bound by a secrecy clause in the settlement agreement not to reveal that to the court. (CMS Exhibit 2). He testified that at the time of the execution of the agreement in Judge Paul Smith's court, the defendants did not even want to tell Judge Smith the amount of the settlement. Finally, plaintiff testified that because he was in so much pain from the traumas he had suffered as a result of the incidents which are the subject of these suits and because he was undergoing psychological treatment that he may have forgotten about the money or just filled in the *in forma pauperis* forms without thinking about it because he had done so many of them. All of these explanations are without merit. The first two, even if true, do not excuse plaintiff from answering the questions truthfully.[2] He could have offered these explanations as justification for allowing him to proceed *in forma pauperis* notwithstanding his apparent possession of sufficient funds to pay the filing fees, but he was still obligated to report the funds. The complaints and subsequent filings by plaintiff belie his statements that he was in so much pain and under such psychological stress that he did not understand the forms. In addition, plaintiff has filed at least 25 previous cases in this court in which he filled out *in forma pauperis* forms. Although he claims that he did not realize that he had to report such income until he was told by the clerk

that the court had promulgated new forms, plaintiff is an intelligent man who by his own testimony was a successful businessman and the forms are not complicated. He certainly has and had the ability to understand what the questions called for.

The question of whether he could report the $4,000.00 under the terms of the settlement agreement is more of a problem. Although Mr. McCoy is an experienced litigator, there is no evidence that he has ever been faced with this type of conflict. Nevertheless he could have reported that he had received the money without revealing the source and he would not have been in violation of the agreement. He most certainly could and should have reported that he had the money in his prison account.

With regard to cases number L–92–952 and L–92–1037, the evidence is not clear that the plaintiff misstated his financial condition. As stated above, he reported that he had received $350.00 ten months before filing those cases and his institutional records reflect only sporadic minimal deposits to his account. It is recommended, therefore, that he be allowed to continue to prosecute those cases.

It is clear that Mr. McCoy, acting in bad faith, blatantly misrepresented his financial condition when he filed the cases *sub judice*, except for cases number L–92–952 and L–92–1037. There is ample precedent for dismissing such cases with prejudice. *See e.g., Romesburg v. Trickey,* 908 F.2d 258, 260 (8th Cir.1990); *Dawson v. Lennon,* 797 F.2d 934, 935–36 (11th Cir.1986); *Thompson v. Carlson,* 705 F.2d 868, 869 (6th Cir.1983); *Ferguson–Bey v. Lever Bros. Co.,* 586 F.Supp. 1435, 1442 (D.Md.1984). There does not appear to be any lesser sanction which would discourage such conduct on the part of plaintiff and others in the future. In this instance, because of the number of misrepresentations and the amount of money which the plaintiff had at various times when he was claiming indigency, it is recommended that cases num-

---

**2.** Plaintiff's testimony at the hearing concerning his providing support for his family is contradictory to his affidavits which state that no one was dependent upon him for support. That testimony is also contradicted by the testimony of Correctional Officer Alice D. Freeman, the

Maryland Penitentiary property officer who testified that the records reflect and that she has personal knowledge that plaintiff purchased expensive jewelry, a color television set, expensive clothing and cigars from Fader's tobacconist. Plaintiff did not deny any of the above.

ber L–90–3014, L–91–153, L–91–1277, L–91–1760, L–91–2151 and L–92–68 be dismissed with prejudice.

Dated May 6, 1992